## S. M. SWENSON et al. vs. THE ADMINISTRATORS of WILLIAM WALKER — Appeal from Fort Bend County.

It is an irregularity in practice to take up and argue a demurrer after a jury has been impaneled to try the cause, but this irregularity cannot affect the judgment rendered on the demurrer.

A party may avail himself of the statute of limitations upon demurrer. If the petition does not show that the plaintiff has a right to sue, at the time he brings his action, a demurrer is the appropriate mode of reaching it.

If the probate judge refuses to permit an administrator to contest a claim presented against an estate, or to allow an appeal, the district court would, in the exercise of its jurisdiction, afford a remedy.

Where an administrator verbally admits a claim against the estate of his intestate to be good, and that it will be paid, and thereby induces a third person to take the claim, he will be estopped from interposing any defense against it in the hands of such third person. [9 Tex. 517; 14 Tex. 312; 18 Tex. 373; 25 Tex. Sup. 120.]

CAMPBELL and JONES for appellants.

HARRIS and PERLEY for appellees.[1]

Mr. Justice LIPSCOMB delivered the opinion of the court, Judge WHEELER dissenting.

---

[1] NOTE.— The counsel on both sides in this case filed very lengthy and elaborate arguments, but no briefs. According to the plan of the present volume, the reporters are precluded from giving the arguments *in extenso*, and are not willing to assume the responsibility of cutting them down to what would be regarded as ordinary briefs; they are therefore compelled to omit them altogether.

This suit was instituted to recover a balance of an account alleged to be due the estate of Walker by McKinney & Williams, and to enjoin Swenson from proceeding to collect an account assigned to him by McKinney & Williams, which account had been approved by the probate judge of Fort Bend county, and an order of sale procured from the court for the sale of enough of the property of the said estate to pay the same. There were several amendments to the petition, from time to time, and the cause was continued from the spring term of the court, 1845, until the fall term, 1848, when there was a verdict of the jury and a decree of the court in favor of the petitioner for a balance against McKinney & Williams, and against Swenson for upwards of $200 collected by him on the account, and a perpetual injunction against the account of McKinney & Williams, which had been assigned to Swenson, from which the defendants all appealed.

It is not necessary, at this time, to make a further statement of the case, as we shall have frequent occasion to refer to different portions of the record. The defendants demurred and answered, and the demurrer was overruled. The record shows that, after the jury had been impaneled, the defendants' demurrer was argued and overruled, from which we infer that the demurrer was considered as being offered to the amended petition as well as to the original. The time when taken up was an irregularity in practice. It ought to have been disposed of by the court before impaneling the jury. But this irregularity could not affect the judgment that ought to have been rendered on it. The correctness of the judgment of the court below, in the judgment on demurrer, will first be examined.

The first ground of demurrer to be discussed is, that the claim against McKinney & Williams is barred by the statute of limitations, as the record shows that the cause of action, if any, accrued prior to the grant of letters of administration on the estate of Walker, which is alleged to have been on the 9th day of May, 1845, and this suit was commenced on the 3d day of April, 1845. The claim set up is for cotton not accounted or paid for by the defendants before that time received.

The 1st section of the act of limitation, passed on the 5th of February, 1841 [Laws 5th Sess. p. 163], among other causes of action therein enumerated, provides, "and all actions upon open accounts, other than such accounts as concern the trade of merchandise between merchant and merchant, their factors and servants, shall be commenced and sued within two years next after the cause of action or suit, and not after." There could be no room for controversy, as to the statute interposing a complete bar in this case, if it had been pleaded. We believe, however, that the demurrer embraces the defense, and that it was not incumbent on the defendants to plead it. The application of the law of limitation to the plaintiff's cause of action, as set out in the petition, shows that she has no cause of action. In the case of Coles *vs.* Kelsey, at the last term of this court, the subject was fully discussed, and, by reference to chancery authorities, it was clearly shown that a demurrer would present such a defense, and there was no necessity to plead it. We then showed that the first decisions under the English statute held that it need not be pleaded; that afterwards it was ruled that it ought to be pleaded, for the reason that perhaps it might be within some of the exceptions to the statute, which exceptions could be proven under the *indebitatus* count. We showed that as we had no such count in our practice, and that as everything material to the plaintiff's right of action must be specially set forth in his petition, it was incumbent on him, if the exception gave him a right, to *aver that exception.* We are now well satisfied with the soundness of the views expressed in that case, and that whenever the application of the law to the facts stated in the opinion will show that there is no cause of action, as in this case, a demurrer is the appropriate mode of testing its sufficiency. The fact that this would be a case in chancery, where a distinct system of equity jurisprudence, independent of the common law, exists, would perhaps give additional weight to the correctness of our conclusion; but we are unwilling to rest our opinion on that circumstance in any, the slightest, degree, because we believe that, without such adventitious aid, it is well sustained by the well established practice in our

courts, and in strict conformity with the rules of our own forum; and we are, therefore, unwilling to intimate any want of confidence in the system of practice established, as we conceive, by the constitution and law of the land.  In the case referred to, we only traced the analogy between our own practice and the rules of the equity jurisprudence of other courts (see Coles vs. Kelsey and the authorities in that case cited), for the purpose of showing that on questions of practice we could derive more advantage from precedents under that system than from the common law courts.  But it is believed that, even if the right of action had not been barred by the act of limitation, the demurrer was well taken.

On the second ground, that plaintiff had not shown any sufficient reason why she had not appealed from the approval of the account, and the order of sale by the probate judge, for the purpose of paying it.  She alleges that she could not, within the proper time, avail herself of the remedy by appeal, from the fact that Briscoe, the co-administrator, would not join in any efforts to defeat the claim, and, on the contrary, was disposed to pay the same.  Had there been any difference between the two, on the subject of the administration, the probate court was the appropriate tribunal for adjusting, and seeing that it was correctly administered.  And again, if by his conduct he was betraying his trust, it was in her power to have restrained him, either by applying to the probate court or by resorting to the district court.  This she did not do, and her assertion that she was not able, because he would not join her, is not true in point of fact, because the remedy was ample.  The appeal, or some other remedy, should have been resorted to.  Not having used any such means, nor given any sufficient reason for not doing so, I do not believe that she should afterwards be permitted to disturb the action of the probate court, which I conceive to be a judgment on the subject matter, and the petition, therefore, showed no cause of action.  Had the probate judge refused her contestation of the claim, or to allow an appeal, there can be no question that the district court could and would have, in the exercise of its jurisdiction, controlled

the probate court. She however made no such efforts, and after having, by her silence, when she must have know it, because she does not allege ignorance, given sanction to the action of the probate court, she cannot now be relieved.

On this ground, therefore, I believe the demurrer ought also to have been sustained.

We will next inquire into the correctness of the decision of the court in refusing to give to the jury the second charge prayed by the counsel of Swenson. It is in the words following: "That if the defendant, Swenson, received the account in consequence of the representations of the then administrators that they would pay it, and that it was good, it would be a fraud on the said defendant were those objections now allowed to affect the claim in his hands." To understand this charge, asked and refused, correctly, it will be necessary to have reference to a part of the evidence on the trial before the jury. The account of McKinney & Williams against the estate of Walker had on it the following indorsements:

"Fort Bend.— We, the administrators of William Walker, deceased, know no reason why the within account of six hundred and sixty-two dollars, against said estate, should not be paid.                MARY WALKER, Administratrix.

" May 15, 1841.      JAMES M. BRISCOE, Administrator "

"Admitted and allowed May 31, 1841.
                " WILEY MARTIN, Judge of Probate."

The account was assigned to Swenson by McKinney & Williams, August 14, 1843.

James M. Briscoe, on his examination, proved that, just before the assignment (about two weeks), the defendant, Swenson, called upon Mrs. Walker with witness, and stated to them that McKinney & Williams offered to assign the account for a debt that they owed him, and he wished to know, before taking the assignment, whether it was just and would be paid. "That they assured Swenson the account would be paid, and probably five hundred dollars of the amount out of the then growing crop of cotton; that he stated to them if they had

any objection to his buying it he would not take it; that they said they would as soon pay him as any one."

This was more than two years after the account had been admitted and allowed by the probate judge. Swenson used more than ordinary precaution in ascertaining if there was any objection to the account. The names of both of the administrators were subscribed to its allowance, and from the lapse of time when Swenson presented himself for the purpose of inquiring if they had any objection to its payment, they surely could have determined whether payment would be resisted or not. There is not a word then said about the account being unjust; not a syllable uttered by Mrs. Walker about her wish to resist payment, but that her co-administrator would not join her in its contestation. They both tell Swenson that "it will be paid, and probably five hundred dollars out of the then growing crop." This amounts to what Chief Justice Nelson, in the Wayland Canal Co. vs. Hathaway, 8 Wend. 483, calls an estoppel in pais. Although not technically an estoppel by release or by deed, yet the party is concluded from denying it.

If permitted to contradict statements so made, on which the party to whom they were made had acted, such permission might operate to the serious injury of the party who was misled by them. It is clear, if there is anything in the proof, that in the case under consideration Swenson was induced to take the assignment on the statements made by the administrators. There are numerous cases in the books where a party has been concluded by his admissions, and not permitted to set up even an illegal consideration against such admissions. So, where the defendant had given a bond and warrant of attorney to secure a gaming debt, the bond was offered for sale to S., whose attorney applied to the defendant, who said the debt was good and would be paid when due; S. thereupon paid and took an assignment; after this, defendant moved to set aside the judgment, but was held concluded by his representations, on which S. had acted. [Davidson vs. Franklin, 1 Barnw. & Adolph, 142; Hill & Cowan's notes on 2 Phil. 204;

see, also, Flower *vs.* Herbert, 2 Vesey; Clark *vs.* Clark, 6 Esp. Rep. 61.] So, where the assignee of a *chose in action* purchases it after a promise to him by the debtor to pay, or his acknowledgment to him, or in his hearing, of the debt made before or at the time of assignment; or, where the debtor stands by and silently sees the debt assigned, he shall be estopped to set up any defense as against the assignee. Thus, the debtor shall not be permitted to prove payment before the assignment. [Hill & Cowan's notes on 2 Phillips, 204; Morrison's Adm'r *vs.* Beckwith, 4 Monroe, 73.]

It is clear, we believe, that the administrator, after having induced Swenson, in this case, to purchase the assignment of the account by her own statements, is estopped or concluded from interposing any defense against the payment of the same.

We are not aware that her suing in a representative capacity can confer on her any right to commit a fraud on an innocent person, and then shelter herself from the consequences of such fraud under the pretext of acting in a fiduciary capacity. As an administratrix, she represented the debt as a good and valid debt, and that it would be paid, and she cannot now be permitted, on any principles of law or equity jurisprudence, to deny it. The court cannot lend its aid to the perpetration of so much injustice, but will leave her to account for her administration, as best she may, with creditors or distributees.

She has placed herself in a position, in relation to Swenson, that, however fraudulent the account may be of McKinney & Williams (of which, however, we have seen no evidence), she cannot be relieved.

There are several other interesting questions arising on the construction of the probate law of 1840, that were discussed with much ability in this case, and we should have felt bound to have given to them an adjudication but from the fact that those points will be presented in other cases, and we shall have the benefit of again hearing them argued, and a decision on them could not affect the result, in any way, of this case; they will not now be decided.

We believe the court erred in refusing to give the charge prayed in behalf of Swenson, and we believe the court erred, also, in rendering a judgment for the plaintiff below on the defendants' demurrer; for which the judgment and decree must be reversed, and this court should render such judgment as the court below ought to have rendered.

The judgment is reversed, and the cause dismissed.

Mr. Justice WHEELER delivered the following dissenting opinion:

The view I entertain of the law of this case imposes upon me the necessity of declining a concurrence in the judgment just pronounced. I should be inclined merely to express my dissent, without explanation, did it not seem necessary, in order to avoid misapprehension, to state briefly my reasons for differing from my brethren.

To present clearly the questions upon which we are divided in opinion, it becomes necessary to note, particularly, what I regard as material facts in the case. These are, first, that the "demurrer" was, in form, a general demurrer; and no special causes of demurrer or exception were assigned. 2d. The demurrer was filed to the *original* petition, and, after the amendment, was not called up or noticed until after a jury had been impaneled to try the issues of fact, and the case was in progress of being committed to them. An inspection of the record will show that the original petition was filed on the 3d day of April, 1845. The plaintiffs, having "confessed the demurrer," obtained leave to amend, and filed their amended petition on the 28th day of October, 1845. On the first day of November, 1848, the plaintiffs, by leave of the court, filed a further amendment. At the same term, after the parties had announced themselves ready for trial, a jury had been impaneled and the plaintiffs had read their petition, preparatory to the introduction of their evidence, the defendants read their demurrer, which was overruled.

The defendants relied on other defenses, and contested the plaintiff's demand on various grounds of law and fact; but *the statute of limitations was not made a ground of defense by the*

*demurrer or otherwise.* Nor, up to the time of the final hearing in this court, do the plaintiffs appear to have had any intimation of an intention on the part of the defendants to invoke the aid of the statute in their defense. But this court, under a general demurrer, which was neither employed nor intended to raise that objection, or present that defense, first discover and decide that the case is barred by the statute of limitations; and, instead of remanding the case to afford the plaintiffs an opportunity to amend by the averment of any acknowledgment or exception which may exist to take the case out of the operation of the statute (as was done in the case of Coles *vs.* Kelsey, 2 Texas R. 541), the court peremptorily dismiss the case; thus cutting off the plaintiffs from the opportunity, and effectually denying them the right of being heard to allege anything in answer to the objection afforded by the statute.

I cannot assent to this determination. It is in direct conflict with former decisions of this court; and is, in my most deliberate judgment, opposed to the best established principles and usages of the law.

I do not question that, under our practice, a defendant may avail himself of the defense afforded by the statute by demurrer, or more properly by exception, when the right of action appears upon the face of the petition to have been barred previous to the commencement of the suit. Nor do I consider it at all material in what *form* the defense is presented. All I would require is that which has been required, it is believed, in every country and every forum in which a law of limitation or prescription has existed, or has been recognized; that is, that the limitation or prescription relied on be made a *defense* in some form.

In all the common law courts, the statute, to avail a defendant, must be specially pleaded. "It was first ruled (says Mr. Angell), that, as the statute prohibited actions from being brought beyond a certain period from the time when the cause of action accrued, it was to be taken as an absolute bar, and operated by its own force, and without pleading it. [Brown *vs.* Hancock, Cro. Car. 115.] Afterwards the judges were

equally divided in opinion on the question. [Tankersley vs. Robinson, Cro. Car. 163.] But as the doctrine, when applied to a case merely because it appeared on the face of the declaration that the action was commenced beyond the time prescribed by the statute, was seen to be clearly untenable, as the plaintiff might be within some of the various exceptions mentioned in the statute, it was overruled [Stile vs. Finch, Cro. Car. 404], and has so continued." [Angell on Limitations, 312, 2d ed.] The doctrine, as settled by the case last cited, has never been departed from to the present time. [2 Lord Raym. 838; 21 Pick. R. 404; 2 Mass. R. 87; 2 Wend. R. 294; 4 Gill & Johns. R. 439; 5 Har. & Johns. 425; 5 Conn. R. 335.] In the courts of chancery, the statute must be made a *defense and relied on by demurrer, plea or answer.* [Ang. on Limitations, 320, 321; Story's Equity Pl. 378, 389, 390; 7 Paige Ch. R. 195; id. 373; 6 Simon Ch. R. 51; 7 Johns. Ch. R. 90; 4 Wash. C. C. R. 631; 4 Yerger, 94.] In the courts of Louisiana, administering the civil law, it is held that prescription or limitation *must be pleaded.* [10 Martin's R. 184; 1 id. N. S. 312; 6 id. 471.]

Such, unquestionably, is the effect which has uniformly been given to similar statutes elsewhere; and I entertain the most perfect conviction that it was the intention of the legislature that this and no other effect should be given to the provisions of our statute upon the same subject. This seems to me plainly deducible from its origin and history, and every sound interpretation of its provisions. Its phraseology is not original or peculiar. It is similar to that of the statute of 21 James I., ch. 16, which has been copied with no material variation by nearly, if not quite, every state in the Union; and from the statute book of one of them, it is well known the principal provisions, and especially the first section, of our statute were literally copied. Can it be supposed that our legislature intended a different construction here, of the provisions of the statute, from that which they must have known had been uniformly given to the same language elsewhere? The supposition seems to me totally inadmissible. It cannot admit of a doubt,

I think, that when they copied the written laws of other countries governed by the same system of municipal jurisprudence, they intended to adopt, along with those laws, the known construction put upon them by the courts of those countries from which they were derived. Had they intended a different rule, they would, doubtless, have declared that intention.

"The American acts of limitations (says Mr. Angell, p. 17), as they relate to personal actions of every kind, are either an exact transcript of the statute of James, or are a revision and modification of it; and that the mere change of phraseology in the revision of a statute before in force will not work an alteration in the law previously declared, unless it indisputably appear that such was the intention of the legislature, has been expressly decided." And he cites 2 Caines' Ca. in Err. 143; 4 Johns. R. 317, 359; 21 Wend. R. 316; 2 Hill (N. Y.) R. 380, which maintain this proposition in the text. "If the periods of limitatation be different in different countries or states, and in different actions, yet as the statutes are drawn with slight variations of phrase, and all being *in pari materia*, the object and intention being the same, they require a uniform construction." [Per ABBOTT, C. J., in Murray *vs.* East India Co. 5 B. & Ald. 204; and see 3 Gill & Johns. R. 394.] "It is to be remembered (said Mr. Justice STORY, in Sherwood *vs.* Sutton, 5 Mason C. C. R. 149) that most, if not all the statutes of limitations existing in the several states in this Union have borrowed the language of 21 James. In all the revisions since the American revolution, the same general enactments have been preserved; and it cannot be doubted that the expositions of the statute which had been adopted in England, both at law and in equity, were well known to those who framed our own. Under such circumstances, it would not be unnatural to suppose that these expositions were received as the true interpretation of the text."

That the words, therefore "no action shall be brought," etc., employed in the first section of our statute, were intended by the legislature to receive the same construction here, which the same and similar words have always received elsewhere --

that is, that they are to be understood as affording a defense to those whose liability may come within the provision of the statute, is, it seems to me, too clear for controversy. I cannot, therefore, acquiesce in the idea that the statute is to be regarded in any other light than as affording a defense to those who can and will avail themselves of the legal advantage which it gives.

In the case of Petty vs. Cleveland [2 Texas R. 464] we decided, in accordance with this view, that the defense afforded by the statute of limitations could not avail a defendant in this court, unless made a ground of defense in the court below. And upon no other principle, as I conceive, can the decision of this court in the cases of Duggan vs. Cole [2 Texas R. 381] and Ennis and Reynolds vs. Cocke [Ibid. 592] be maintained. The very reverse is the decision in the present case. The former decisions are overruled; and yet there is no attempt to show wherein they are erroneous, to answer the authorities cited in their support, or to demonstrate their unsoundness upon principle or authority, by the force of either reasoning or precedent. I cannot regard the present determination otherwise than as the gratuitous interposition for the defendants of a defense which they had declined to make; and for the reason, I must presume, that they knew it would not avail them in consequence of the existence of some acknowledgment or exception withdrawing the case from the operation of the statute, or that they could not justly avail themselves of it. And surely we are at liberty to indulge the presumption that a defendant will not seek to take advantage of the statute when he is conscious that he cannot successfully or honestly do so. We are not to assume that a debtor will disregard the obligation which all must acknowledge does exist, *in foro conscientiæ*, to pay a just debt, though the right of action upon it may have been barred by the statute.

I cannot better state what I conceive the true and hitherto uncontroverted doctrine of the law upon the subject of this defense, than by repeating the language of the supreme court of Louisiana, that "the law has provided defendants with the plea of

prescription that they may use it as a shield to protect themselves from unjust claims, not as a weapon to destroy just rights. The court neither can nor ought to supply the want of it *ex officio.* When the plea is not made, the presumption is that the defendant thinks it would not avail him at all, and that he cannot righteously avail himself of it." [10 Martin's R. 185.] And again, "every period within which a party must or is directed to institute his action is established for the benefit of the defendant, who is bound not to avail himself unrighteously of this legal advantage provided for him. It is his duty to abstain from the use of it while his just defense does not require it. When, therefore, a defendant answers the plaintiff's petition without urging that the suit was not brought within the time fixed by law, the court is bound to conclude that the defendant, yielding to the obligations of morality, declines a legal advantage which justice reproves." [7 Martin's Rep. N. S. 317.] This language seems to me to have been dictated by sound views of morality as well as of law. Authorities to the same effect are too numerous and familiar to require particular reference, and there is nothing to the contrary. "If " (says the learned Sergeant Williams, who speaks from the authorities, and is himself a very high authority) " the defendant intends to insist upon the statute (though he may waive it if he chooses), he should plead it to prevent surprise; and if he do not do so, it is presumed he intends to waive it." [2 Wms. Saund. R. 636, n. 1.] Chief Justice TILGHMAN says: "If six years elapse after the cause of action accrued, there can be no recovery, although the debt is *not extinguished.* It remains due in *conscience,* and is a good consideration for a new promise. It remains in some respects due in *law,* too; for if the defendant omits to plead the act of assembly, he is considered as having waived the benefit of it, and the plaintiff may recover against him." [2 Brown R. 35; 5 Binn. R. 573.] And this, it is said, "is clearly expressive of the law as it is now generally understood to be." [Ang. on Lim. 229.] And "the statute being a strict defense, if the party omit to plead it, the court will not relieve him by permitting him to amend

by adding the plea." [*Ibid.* 313; 2 Wend. R. 294; 4 Gill & Johns. R. 381.] These are among the principles which, according to Mr. Angell in his edition of 1846 (p. 230), "lie at the foundation of the *modern decisions*" upon the statute, both in England and the United States. It requires no comment to show how very widely they are departed from in the present case.

"That the statute must be pleaded even where the case appears on the face of the declaration to be out of time, has been confirmed in a late case in England." [*Ibid.* 312; 3 Scott (C. B.) R. 265; 5 Bing. R. (N. Cases) 713.] And there is no foundation for the supposition that the reason for requiring the statute to be pleaded was, that "the exception could be proven under the *indebitas* count." Such a principle is not to be found in the English cases; but a very different reason, as we have seen, is assigned in all the cases, both English and American. Any argument or conclusion drawn from such a supposition must, therefore, be erroneous, and cannot require other answer than a reference to the authorities.

As special reference is made to the case of Coles *vs.* Kelsey, it appears proper, though it is, perhaps, scarcely necessary, for me to say that I cannot regard that case as, in any respect, a precedent for the present decision. For in that case *the statute was specially pleaded and relied on as a defense, and the only defense, in this district court.* There was no demurrer, and no occasion for one to present the defense of limitation. There was and could be no question that the statute was well and rightly taken advantage of; and the question in the present case was not presented by the record, and could not possibly have arisen in that case, for the obvious reason just stated that the statute was *specially pleaded.* The subject of the proper manner of taking advantage of the statute, and whether it could rightly be done by demurrer, was, indeed, discussed at some length in the opinion of the court; but not having been presented by the record, nor suggested in argument, I was not permitted to regard what was said upon that subject otherwise than as extra-judicial, and as intended only

to present the individual views of the member of the court who delivered the opinion. To have given the discussion a more extended application would have been to subject it to the observations of this court in Tompkins & Co. vs. Bennett [Tex. R. 3, p. 36], where it is said of questions not presented by the record, "any discussion of these questions now would be traveling out of the record, and, in my opinion, a violation of the duty of an appellate tribunal." "Besides, the decision of a court on a point not presented by the record ought not to be entitled to the weight of an adjudged question."

What was said in Coles vs. Kelsey of the propriety of taking advantage of the statute by demurrer, I have seen no reason to question; but it appeared to me to have no relation to anything then before the court, and as manifestly has, it seems to me, no proper application to the present inquiry, which is, as I conceive, not whether this defense can be interposed by demurrer, but whether it is necessary that it should have been interposed at all. The present, in my opinion, goes very far beyond even that decision; for here the court interpose for a defendant, or what is the same in effect, allow him the advantage of a defense which he did not make; whereas in that case the defense was specially interposed by the defendant. In that case, moreover, the court remanded the case to afford the opportunity to the plaintiff to amend, by averring a subsequent acknowledgment of the debt in answer to the plea of the statute; but in this they reverse and dismiss, thus precluding the plaintiffs from the opportunity of meeting and repelling this objection to their right to maintain their action. In the former case, the attention of the plaintiff had been specially directed to that defense, and an opportunity afforded to answer it before the case was removed to the appellate court; yet that court remanded for the express purpose of affording another opportunity. In the latter case, no intimation is given of the necessity of amendment, and the statute not being objected by plea or otherwise, no opportunity is afforded to answer it, and the appellate court, instead of remanding to afford that opportunity, dismiss the case; assuming, it must be, that there either can-

not or does not exist any acknowledgment or exception which might be the subject of averment to withdraw the case from the influence of the statute. But why not? Is it not the natural and rational as well as legal presumption, that there did exist some reason why the defendants could not effectually plead the statute, and that knowing this they declined the attempt? If the statute had not been pleaded in Coles *vs.* Kelsey, and the defendant, relying upon other defenses, had been silent as to that, is it probable that the plaintiff would have thought it necessary to produce at the trial the letter containing the acknowledgment relied on as an answer to the plea of the statute? But the plea called forth the letter containing the new promise. And why may not the same consequence have followed had the statute been pleaded in the present case? Upon what principle, then, can the present plaintiffs be denied the right which was accorded to the plaintiff in the case of Coles *vs.* Kelsey? They certainly are entitled to the same rule of decision and measure of justice. It cannot surely be supposed to require so marked a discrimination in favor of the present defendants, that they are chargeable with the extraordinary laches of having omitted to urge what appears to be regarded as their most effectual defense.

In so far as the decision in Coles *vs.* Kelsey does not conflict with other decisions of this court equally obligatory upon me, though made without my concurrence, I might feel it my duty to submit to and follow its authority. But were I to adopt that decision in its utmost extent, it could afford me no ground of acquiescence in the present determination.

But *the circumstances under which the demurrer in this case was presented* seem to me to have fully justified the court in overruling or excluding it from consideration.

After the plaintiffs had amended their petition, nothing further was heard of the demurrer until after the case had been put to the jury upon the issues of fact. It was then too late under the statute for the court to allow an amendment in case the demurrer should be overruled; and this fact, in my opinion, required its rejection. In Cook *vs.* Crawford [1 Texas R. 9],

this court held that " the province of a demurrer is to point out defects in the pleading demurred to, *so that it may be amended*." And in Coles *vs.* Kelsey [2 Texas R. 541], the court refused to consider a demurrer because it was filed *after an answer to the merits*, without leave first having been obtained to amend the pleadings. If the defendants intended to rely on their demurrer, they ought certainly to have made known that intention, and asked the judgment of the court upon it, before the time for amendment had passed by. Not having done so, they ought, I think, to be held to have waived it. By the common law, a demurrer is waived by pleading, or joining in an issue of fact; and although our statute changes the rule, and, like the Virginia statute, from which it seems to have been borrowed [Rev. Code, 510, sec. 88; 2 Brock. 14], allows both law and fact to be pleaded at the same time [4 Stat. 89, sec. 10], yet there can be no reason why, in our practice, the questions of law should not be disposed of before a jury is impaneled to try the issues of fact. To entertain a demurrer under circumstances like the present must, it seems to me, operate a surprise and fraud· upon the plaintiff. It enables the defendant to conceal and reserve his objections, and by a kind of stealth to spring them upon the plaintiff when it is too late for him to meet and obviate them by an amendment of his petition. It gives countenance and encouragement to unfairness, and disingenuousness in practice, and ought not, I think, to receive judicial sanction.

But even if the demurrer was rightly heard under the circumstances, *it did not present the defense of the statute of limitations; nor is it pretended that that defense was intimated, even verbally, in argument upon the demurrer, or that it was intended to have been raised by it.* As was said by the supreme court of the United States of an objection made under like circumstances with the present:  " This objection was not made in the court below, at the hearing or in the argument, so that no opportunity was afforded to the petitioner to produce any evidence on the subject, or to his counsel to answer the objection. Under such circumstances, it would be dealing to

the petitioner a measure of justice incompatible with every principle of equity, to visit upon his title an objection which he was not bound to anticipate in the court below." [9 Peters' R. 731.] Of an objection thus offered in the House of Lords, Lord ELDON said: "Had 'this cause been heard before me, and had I presided during the argument of the appeal against it, under the circumstances that have occurred, I would not have allowed counsel to make the point at your Lordship's bar." [2 Sch. & Lefr. 710.] And the court of errors of New York refuse to hear parties, or to permit counsel to argue objections thus first used in the appellate court. [16 J. R. 353; 18 id. 558; 4 id. 602; 14 id. 560.] Thus, to entertain objections in the appellate court not urged in the court below, is at variance with what I regard as the settled law of this court, as recognized in repeated decisions.

In Hansborough vs. Towns [1 Texas R. 58] this court say: "This objection, if it be one, was not urged in the court below, and it is now too late to insist on a defect which should have been objected to at the trial," etc. In O'Conner vs. Towns [id. 107,] it was held that, "if it do not appear in the record that defective pleadings were objected to in the court below, the defects will be considered here as having been waived." And in Thompson vs. Duncan, this court refused to entertain questions made in argument here upon the demurrer, because it was not so framed as to present the particular questions for adjudication below. [Ibid. 489.]

That objections not urged in the court below will not be entertained in the appellate court, was repeatedly decided by the supreme court of the republic, as will be seen by consulting the following cases: Daily vs. Chevallier, Dallam, 555; Wescott vs. Menard, id. 503; Edward vs. Peoples, id. 359; Mann vs. Thurston, id. 370; Bailey vs. Haddy, id. 376. If there were any room for doubt as to their coincidence with the settled, uniform practice of all appellate courts, these cases must, it seems to me, be considered in themselves as settling the law here too firmly to be now questioned; and I am thoroughly satisfied of the wisdom and justice of the decisions.

Indeed, it does seem to me, as was said by Mr. Justice BALD-WIN in Harrison vs. Nixon [9 Peters, 536], that there can be no course so utterly subversive of equity, nay of common justice, as to hear parties in an appellate court on points made under circumstances like the present.

Having deliberately, and with the best consideration I was able to give the subject, participated in the decision in Petty vs. Cleveland, and the other cases I have referred to in connection with that decision, and being thoroughly satisfied of their entire correctness, I deem it my duty consistently to maintain them so far as my own judicial action is concerned. When convinced of having fallen into error, I shall be ever ready with the utmost alacrity to correct the error; but when in my judgment a question has been rightly adjudicated by this court, I shall feel it a duty to abide by the decision.