## C. A. FLOYD ET AL. v. RUST, ADM'R.

(Case No. 1046.)

1. ADMINISTRATOR'S SALE — APPROVED CLAIM.— In a suit by an administrator on a promissory note given by the defendant and his sureties for land bought at administrator's sale, the defendant pleaded that he held an approved claim against the estate, which he was induced to purchase by the administrator agreeing that such claim might be applied in making a *pro rata* payment on the land to the extent

of $2,500. This was denied by the administrator. The estate as to general cred-
itors was insolvent. The evidence showed that on the day of sale the defendant,
on approaching the administrator, took from his pocket the claim referred to, and
which that administrator had not before seen, and asked him how much land it
would buy, to which question, after a hasty calculation, he answered "twenty-five
hundred dollars' worth." *Held*,

(1) The answer of the administrator under such circumstances was rather the
expression of an opinion than a proposition to receive the claim in payment for
that amount of money in case of a purchase of land.

(2) The good faith of defendant in the purchase of the claim being denied,
nothing short of the clearest proof and the most perfect good faith could sustain
the defense.

(3) An understanding by the sureties when they contracted the obligation, that
it was to be paid with the approved claim of their principal, would be no defense
for them, unless such understanding resulted from the acts or representations of
the administrator.

2. FACT CASE.— See opinion for facts held insufficient to maintain the defense to a
suit on a note given for land purchased at administrator's sale, that it was agreed
that an approved claim held by defendant should be received in payment therefor.

3. CASES DISCUSSED.— See this case for a discussion of the cases of Swenson *v.*
Walker, 3 Tex., 93, and Dickinson *v.* McDermot, 13 Tex., 248.

ERROR from Wharton. Tried below before the Hon. Wm. H.
Burkhart.

This suit was brought November 15, 1877, by defendant in error,
J. Rust, administrator *de bonis non* of the estate of M. S. Stith, de-
ceased, against plaintiffs in error, C. A. Floyd, J. A. Hamilton and
W. J. Goodsey, upon a note given by them for land purchased by
Floyd at a sale made by the administrator, and to foreclose a mort-
gage thereon given by the purchaser.

The pleadings on both sides were voluminous, but as the case was
disposed of on one or two issues, it is sufficient to give only the
substance of the pleadings.

Floyd set up that he was the owner of a large claim against the
estate of Stith, which had been allowed and approved; that he had
bought the claim for the express purpose of using it in the purchase
of lands belonging to the estate; that on the day of the sale in
1873, he exhibited the claim to the administrator; told him that he
had bought it in order to use it in buying land of the estate, and asked
how much land (in value) he could buy with it, and pointed out on
the map the particular lands he wished to buy; that the administra-
tor told him the claim was good, and he could buy land with it to
the amount of $2,500; that relying on this assurance he bought
lands to the amount of over $2,000, for which he gave the note sued
on, and that these lands brought a much larger price than adjoining
lands of equal value which were sold to other purchasers; that when

he gave the note he told the administrator that he would have no money to pay the note when it matured, and was assured by him that he need not have, as the claim would be sufficient to pay for the land; that he further stated that at the date of the sale of the land he had not finally completed his purchase of the claim, and had then paid only $700 of the purchase money, and could then have rescinded his contract for the claim; that relying upon the representations of plaintiff, he completed his purchase of the claim and paid the balance upon it, $1,500 in cash. He set up these facts as an estoppel upon the plaintiff: He alleged that when Rust became administrator in 1873, the inventoried value of the estate was $25,075, and the total claims $27,098.25, and no privileged claims save expenses of administration.

Goodsey and Hamilton alleged that they signed the note as sureties, and with the understanding that it was to be paid with the claim above mentioned.

The claim was in favor of one De Graffenried. Rust (the plaintiff) replied that defendant Floyd had obtained the claim from N. B. Floyd, the former administrator of Stith's estate; that N. B. Floyd had bought the claim with funds of the estate; that Floyd was largely indebted to the estate, and had never accounted therewith. He also denied that he had made the representations set up by defendants.

A trial was had June 10, 1878; verdict and judgment for plaintiff for the amount of note and interest, and foreclosure of the mortgage decreed.

Of the assignments of error, only two were relied on, the seventh and the eighth. The seventh related to the refusal of the charges asked by defendants, and the eighth that the charges given by the court (except fifth clause) were against the weight of the evidence.

*Peticolas & King*, for plaintiff in error.— If a person is induced by the representations of an administrator to buy a claim against the estate, and pay $2,200 for it, and is promised by the administrator that he may buy a certain amount of land with the claim, and does so buy, then a charge which does not fully and fairly present these issues to the jury, and permit them to find whether the estoppel in fact exists, but superadds qualifications not warranted by the facts in proof, or necessary to exist in order to raise the estoppel, is erroneous. Swenson *et al. v.* Walker, 3 Tex., 93; Thomas *v.* Geer, 6 Tex., 369; Eborn *v.* Cannon, 33 Tex., 248; Selkirk *v.* McCormick, 33 Tex., 151; Johnson *v.* Brown, 25 Tex. Sup., 120; Trammell *v.*

Swan, 25 Tex., 473; Atchison *v.* Smith, 25 Tex., 228; Dickenson *v.* McDermott, 13 Tex., 249.

*A. P. McCormick*, for defendant in error.

I. In a suit by an administrator to enforce the collection of a note and foreclosure of a mortgage given for the purchase money of land of the estate, the makers of the note cannot bar a recovery by setting up in the district court their claims as creditors of said estate.

II. That the purchaser could not resist the payment of the note on the ground that by misrepresentations the administrator had induced him to purchase when he otherwise would not, without offering to surrender the land. He cannot hold as a purchaser at the sale and avoid paying the bid on that ground alone.

III. If Rust was responsible for inducing the defendant Floyd to complete the purchase of the De Graffenried claim, Floyd's remedy was against Rust individually, and Rust's liability could not be set up as a bar to the estate's recovery.

IV. The proof amply supports the verdict of the jury and judgment of the court, and there is no error in the action of the court below of which the defendant can complain. Atchison *v.* Smith, 25 Tex., 230, 232; Guthrie *v.* Guthrie, 17 Tex., 541.

DELANY, J. COM. APP.— The sixth clause of the judge's charge was, that if N. B. Floyd was indebted to the estate of Stith when he bought the De Graffenried claim, then he could not make a valid transfer to the defendant C. A. Floyd, but was required to hold the claim subject to the settlement of his own account. There is no evidence in the record that N. B. Floyd was indebted to the estate, and therefore we think this charge should not have been given. Dodd *v.* Arnold, 28 Tex., 97, and cases cited.

The same objection may be made to a part of the first clause, in which the jury are told to find for the plaintiff if they believed that C. A. Floyd had not bought this claim with his own money.

The second clause of the charge is as follows: "Before you can come to the conclusion that N. B. Floyd became the purchaser or holder of the De Graffenried claim, it must clearly . . . appear . . . that the transaction on the part of N. B. Floyd was a strictly honest one, and made with no purpose to defraud the estate of Stith, which he then represented."

The only objection which can be made to this clause is that the last four words represent N. B. Floyd as the administrator of the estate when he bought the claim, of which there was no evidence except negative evidence, to which we will allude hereafter.

The third clause is as follows: "If you believe, from the evidence, that C. A. Floyd became the purchaser of said claim, and paid therefor out of his own money or the proceeds of his own property, you will find for the plaintiff; nevertheless, unless you believe that the plaintiff, before the sale, deliberately represented to the defendant C. A. Floyd, upon inquiry being made in relation thereto, that said claim was good, and would be received in payment for land to the amount of as much or more than the amount of the note herein sued on, and that thereby said C. A. Floyd, in ignorance of the condition of the estate, . . . was induced to buy the land, and execute the note upon which this suit is brought, you will find for defendants, provided said N. B. Floyd had a right to buy and transfer said claim."

The jury were further charged that although Rust may have made ever so many representations, still if Floyd knew the condition of the estate he would not be protected. He must have acted solely upon the representations of Rust; must have been misled and deceived by them, and his own conduct must have been free from suspicion.

We do not think that these latter clauses of the charge can be objected to by plaintiffs in error. The charges lay down the rule that if the defendant Floyd, being entirely free from fault, in ignorance of the condition of the estate, and relying solely upon the deliberate representations of plaintiff that he could purchase with the De Graffenried claim a certain amount of land belonging to the estate, was thus induced to complete his purchase of that claim, when he would not otherwise have done so, in that case plaintiff could not refuse to receive the claim when tendered in payment of the note. This was as favorable to the defendants as could well have been asked, and it raises the difficult question, how far the estate is bound by the acts and representations of the administrator.

The authorities to which we are referred by defendant in error (Atchison v. Smith, 25 Tex., 228, and Guthrie v. Guthrie, 17 Tex., 541) do not meet the case. They simply decide that a party who has purchased property of an estate and given his note, cannot, when sued by the administrator, offset against the note a claim which he may hold against the estate. To allow this, the court hold, would virtually vest the probate jurisdiction and transfer the settlement of estates to the district court.

Nor has counsel for plaintiffs in error referred us to any case which is in all respects like the one before us. They do not pro-

pose to rescind the contract and restore the land to the plaintiff, as was proposed in the case of Crayton v. Munger, 9 Tex., 285, but they insist on keeping the land and compelling the plaintiff to take the De Graffenried claim. They cite among other cases, Swenson v. Walker, 3 Tex., 93, and Dickinson v. McDermott, 13 Tex., 248.

In the first of those cases, an account of McKinney & Williams against the estate of Walker had been allowed and approved. McKinney & Williams being indebted to Swenson, offered him their claim in payment of their debt. Swenson applied to the administrators to know if the claim was valid. They assured him that it was; that it would be paid; and that they would as soon pay it to him as to anyone else. He accordingly took the claim, and afterwards commenced proceedings in the county court for its collection. One of the administrators sought to enjoin the collection upon the ground that the claim was not valid. The court held that, as against Swenson, the administrator could not be heard to allege the invalidity of the claim. The court say: "If permitted to contradict statements so made, on which the party to whom they were made had acted, such permission might operate to the serious injury of the party who was misled by them. It is clear . . . that in the case under consideration Swenson was induced to take the assignment on the statements made by the administrators."

In the other case, Dickinson held a claim against the estate of McDermott which had been allowed and approved. The estate held a larger claim against him. The executors brought suit against him upon the claim held by the estate. He then surrendered to one of the executors his claim against the estate as a payment pro tanto, and the executor promised in writing to dismiss the suit. The suit, however, was not dismissed, but judgment was taken against Dickinson for the whole amount of the claims against him, without regard to his claim against the estate. He applied for an injunction, setting up the above facts, and further, that he had paid to the executors the difference between the two claims. The supreme court held that he was entitled to the injunction. The chief justice remarks that ordinarily an administrator will not be forced to receive a claim against the estate in set-off to a debt contracted after the death of the testator or intestate, " as this might lead to embarrassing investigations in relation to the solvency of the estate, and the sufficiency of the assets to pay claims."

The rule, however, is for the benefit of the executor or administrator. It exempts them from compulsion, but does not interfere with their voluntary action. They act upon their own judgment,

and at the peril of being held accountable upon a deficiency of assets. 13 Tex., 352.

In the two cases last cited, it will be noticed that there is no dispute about the facts. Dickinson and Swenson had acted in perfect good faith. They had relied upon the acts and representations of the administrators, and it would have been a fraud upon them if those acts and representations were repudiated.

In the case before us, the administrator does not question the validity of the claim, as was done in the case of Swenson v. Walker, but he denies that he made the representations and entered into the engagements imputed to him. It may then be said that this issue should have been submitted to the jury, unembarrassed by the objectionable charges which the court connected with it. No doubt this would have been the better course. But still the question recurs, whether this supposed error of the court will necessitate a reversal of the judgment. Upon one part of the case the several members of the commission are not in perfect accord. One member holds that even if Rust had made the representations imputed to him, still the defendants could not avoid the payment of the note without tendering back the deed and proposing to rescind the contract; and further, that if the defendant Floyd was injured by the representations or acts of Rust, his remedy would be against him individually, and not in his representative character. I am not willing to deny the correctness of this proposition as a general rule. But it seems to me that if an administrator can voluntarily receive a claim in discharge of such a debt to the estate (as was done in the case of Dickinson v. McDermott), he might, in favor of a perfectly innocent party acting in good faith and with proper caution, make such representations as would bind him to receive it. This, I think, would perhaps be so if a party, acting solely upon these representations, should purchase a claim which would be worthless in his hands unless so received.

This is the theory of the case presented by the plaintiffs in error. But as the case appears in the record, we do not think that the defendant Floyd is entitled to the full measure of this equitable defense. He was acquainted with the condition of the estate — knew it perhaps as well as the administrator himself. The latter had qualified some time in the year 1873, and the sale was made in May of that year. On the day of the sale he approaches the administrator, and producing from his pocket a claim which the latter had never before seen, asks him how much land it would buy. The administrator makes a hasty calculation, and tells him "twenty-five

hundred dollars' worth." This answer, made at such a time and place, looks rather like an expression of opinion than a deliberate and binding engagement. The defendant was a near relative of N. B. Floyd, who was the son-in-law of the intestate Stith, and had been administrator of the estate from the year 1866 until 1873, when the plaintiff was appointed. The plaintiff charged that N. B. Floyd had obtained this claim while administrator, and with funds of the estate. It had been transferred by him to the defendant. The latter does not pretend to have been ignorant of N. B. Floyd's connection with the estate. He merely says that N. B. Floyd told him he owned the claim.

In this state of the case, the defendants evidently felt that some explanation of the manner in which N. B. Floyd had obtained and transferred the claim ought to be given. They propounded interrogatories to him, in which they urged him in every variety of form to give a full, complete and explicit account of the whole matter, with the details of time, place and circumstances.

Counsel on the other side propounded a number of searching cross-interrogatories. But neither the persuasive tone of his friends nor the pointed questions of the other side could elicit anything that savors of explanation. There is apparently a studied secretiveness in his whole manner. His answers are shy, evasive and in monosyllables. It is difficult to read them without a strong suspicion that there was something connected with the history of the claim which he did not care to reveal. Now it must be borne in mind that the defense which was set up was a purely equitable one. The possession of that claim by C. A. Floyd, even though he had paid value for it, did not give him the legal right to plead it in set-off against the note.

Nothing short of the clearest evidence and the most perfect good faith could sustain such a defense. The sureties claim that they signed the note under the impression that it was to be paid with the claim which was held by Floyd, but they do not show that they received that impression from the acts or representations of the plaintiff.

Our opinion is that the case made by the defendants does not entitle them to the relief which they seek. We think, therefore, that the judgment should be affirmed.

AFFIRMED.

[Opinion approved February 9, 1883.]