Hempiiti.u, Ch. J.
The only question which arises in the case is, whether the right is barred by the lapse of time or the lairs of limitation.
This case presents some singular features and some facts irreconcilable. That the daughter, Louisa, a girl of nine years of age at the record of the will containing various bequests in favor of herself and brothers, and which was likely, therefore, to have become the subject of family conversation, having lived' until twenl.y-iive years of age before marriage, and having survived her coverture for four years, and having, during eleven years of her life, a husband wlio, prior to removal to Texas, had a strong interest in reducing this legacy into possession, as it would then become ills own, the will being'also publicly recorded in a county where tiie legatee and family resided for sixteen or seventeen years — that under such circumstances tiie daughter should have remained in ignorance of the bequest is altogether improbable. Unfortunately the fatlier, daughter, and husband are all dead, none survive to speak to the transaction, aud explain, in perhaps a few words, that which is now enveloped in obscurity.
Tiie written memorial, that is the will with its bequest, remains, hut the arrangements and dealings which may have taken place between the father *126 and daughter, resulting in the retention by the former of the property, are buried in the darkness of the past.
It is not to bo presumed, prima facie, that the father would voluntarily rob his daughter of the testator’s bounty. His memory has been thus stigmatized, and the circumstances, under the clouds thrown over them by time, are somewhat suspicious; but it must be remembered that the grave cannot repel assaults upon character, however libelous or atrocious they may possibly be. The father, daughter, and husband lived many years together,, for aught that appears, without a murmur of discontent or breath of complaint against each other. More than thirty years after the bequest the fattier and ¿laughter, it may bo said, sunk into the tomb together, without a symptom of disaffection to mat the closing scene of their lives. Can it be believed that a father, so loved and so trusted as to have been appointed by the husband one of the guardians of the children now suing, could have, been for thirty years of his life practicing a fraud and dccepf ioii upon his daughter and the mother of these children? In the mystery which surrounds this affair, is it not much more reasonable to presume that, for some sufficient consideration, the daughter had relinquished her right in the property? An aged witness, in a deposition inserted in the record, explained the transaction, from conversations with Alexander Mebane, as follows, viz:
That the girl Haney was retained by the fattier in exchange for another which his daughter carried with her on removing to Texas. I refer to this, not as a fact having any bearing on the case, for it had none, and is not claimed to have bad any, but to show with what facility this transaction might be explained were the actors in it still living; how easily its difficulties' might be unraveled, and liow small a matter would demonstrate, beyond question, the truth of the fact that the daughter had information of the bequest, a fact which of itself lias every presumption in its favor.
But, without further observations which militate against the plain-_ tiff’s claim on the score of probabilities, let us examine some of the positions assumed in the able argument of the counsel for the appellant. The sum and substance of the grounds on which is sought the reversal of the judgment, are that trusts, as between trustees and cestui que trusts, cannot bo reached by statutes of limitations; that executors and administrators arc beyond the purview of the statute, and that ignorance of the legatee and fraud of the executor will prevent the statute from'operating as a bar.
The rule that trusts are not affected by statutes of limitation, was in the earlier cases very loosely expressed, and gave rise to erroneous decisions. Chancellor Kent, having been misled by them in the case of Carter v. Murray, (5 Johns. Chan. R., 522,) examined the subject very elaborately in the case of Kane v. Bloodgood, (7 Johns. Chan. R., 89,) and in a review of the eases laid down the rule that trusts not affected by statutes of limitation are those technical and continuing trusts not at all cognizable at law, but which fall within the peculiar and exclusive jurisdiction of courts of equity. (Id., 111.) All trusts which are cognizable at law are not withdrawn from the operation of the statute. Persons wiio receive money to be paid to another, or who misapply money placed in their 1 lands for a particular purpose, (.lie reciprocal rights and duties founded upon the various species of bailments, as between hirer and letter to hire, borrower and lender, depository and persons depositing, &c.,are cases of express and direct (rust; but, being cognizable at law. are within the reach of (.lie statute. The subject has been so much discussed that, in States where there is a separate chancery jurisdiction, and statutes of limitation are restricted to actions at law, the rule is of easy application. All implied and constructive trusts, all which are cognizable at law, are subject to the bar of limitation, and equity applies the same limitation to equitable demands that is applied in analogous cases at law. It is only where the trust is the mere creature of equity, exclusively cognizable within that jurisdiction, and is a subsisting, continued, and acknowledged trust, that the statute has no operation. It is more difficult in our system of procedure to apply the rule. The *127 chancery and common-law jurisdiction are here blended. The doctrine that the trust must be exclusively within the jurisdiction of equity to save it from the statute has very little application in a system of jurisprudence where there is no exclusive equity jurisdiction, and where the statute applies to all subjects within its provisions, irrespective of whether they involve legal or equitable rights, and whether elsewhere they be cognizable at law or in equity. No doubt, with us, the statute extends to all eases in which it is admitted to be applicable in other common-law States. How much more it may embrace has not been delermined. That portion of the rule which requires the trust not barable, by (hue to be subsisting, continued, and acknowledged, is of more universal application, aud in all cases which come properly within the definition, and are not repugnant to either the express provisions or policy of the statute, there is no doubt that lapse of time would not be permitted to operate as a bar.
But oven (bis rule, loses its force when the trust is repudiated by acts or words of the parlies. When for instance, the trustee, in disregard of" the cestui que trust, claims absolute ownership in himself, the latter will he barred by tlie law of limita! ions and the rules in relation to the effect of tlie lapse of time in other similar cases. In this case the plaintiff charges that the executor, Alexander Mebane, refused to pay over the legacy, but kept aud retained the slave in his own possession, claiming her as his own properly dnring- the whole of his life. Had lie paid ibis legacy over during the infancy of his daughter it would have been to himself as her guardian. Ilis possession until she attained majority was not adverse. It was consistent with the right of Louisa, whether she be regarded in the capacity of a legatee or of a daughter. Slie attained majority eleven or 1 wolve years after tl'ie father had taken t-lie property into his possession in the capacity of an executor. His claim in his own right after that period became adverse. There is not shown to have been any debts against the estate of the testator; nor is there any pretense that there was anything which could have afforded a pretext to the executor to further retain the property in his trust capacity which would have operated the slightest impediment to its recovery by the legatee. On the plaintiff’s own showing the executor and father set np aud persisted in an adverse claim through life. The trust being thus repudiated it became, upon the authorities, immaterial whether a suit for tlie recovery of the, legacy was cognizable at law or in equity. In either jurisdiction it must have been prosecuted within the period allotted by law for the, recovery of this species of property; otherwise the claim would have been burred.
In England and in some of the States the time for the prosecution of suits for legacies has been specially prescribed. Formerly in England they were exempted from the operation of the statute on the ground of exclusive cognizance in equity, and on the further ground that the statute will not commence until a sufficient amount of assets he collected for the payment of debts and legacies, and it is impossible to pay when that will be. \Ve have seen that af'ler the adverse claim by tlie father it was immaterial, so far as the operation of the law of limitation is affected, whether the suit be cognizable at law or in equity. The effect would be the same on the rights of the daughter. In either case they would he forfeited by her laches.
On the. facts of this case there cannot be a pretense that the trust, after the daughter came of age, could be regarded as acknowledged, continued, and subsisting. All the trust purposes liad been accomplished, aud the trust itself was at an ead, especially when (he property was claimed adversely.
With respect to our own laws on the subject of recovery of legacies, the rule that they are not affected by the statute, and the grounds on which we have seem that; that rule is placed, can have but limited application. Administrations, under our law, are required to be vigorously prosecuted and speedily closed. The rights of creditors, legatees, and heirs are to be adjusted with all the promptitude consistent with the interest of parties interested in tlie succession. Under our former laws, viz, the laws of Spain, executors were required to execute the will of the testator within a twelve month at the furthest.
*128 (White Recop., 197.) This policy was also the characteristic of the laws of Louisiana; aucl the same policy, with some relaxation, lias pervaded to the present time our laws relative to the settlement of the estates of deceased .persons. There is nothing in the laws of this State which would sanction negligence on the part of legatees, or justify laches in the prosecution of a suit ■for a specific legacy, adversely claimed, beyond the time limited for suits for the recovery of such property. Our present statute, while recognizing the prior right of creditors to satisfaction out of the assets, are not negligent of the .rights of legatees; and modes are prescribed for their prompt recognition and by to the probate court.
The fact, simply, that the daughter was ignorant of the bequest, is not sufficient to impede the operation of the statute. The jury find that the daughter was ignorant, but that there was no fraudulent concealment by the executor. This finding, under many circumstances which might be easily imagined, would ■be contradictory iq itself. As it stands, it cannot be taken to mean anything more than that there was no evidence that the deceased daughter knew auy-■thing of the legacy, nor was there any evidence that the executor attempted to conceal its existence. If she was in fact ignorant, (a supposition which is almost beyond the range of credibility.) her want of information is attributable, say the jury, to no fraudulent concealment on the part of the father. The facts of this ease repel the idea that there could have been any fraudulent or effectual concealment of the bequest. Tire will was publicly recorded, and an inventory was made and returned, and sales of property were effected under the will. The parties all lived for mauy years afterwards in the county where these acts were done; and the charge, under such circumstances, that the fact of the bequest was concealed by the executor is contradicted by the circumstances of the case. He not only did not suppress it, but, on the contrary, he proclaimed it to the world by the proof and record of the will. The legatee, and others interested in the will, had an opportunity of ascertaining its contents. If she neglected to avail herself of the means of information within her reach, it is her misfortune, and she’and her heirs must bear the loss. To permit ancient transactions and stale demands of more than thirty years standing to be reopened and litigated, on the pretense that (he claimant was ignorant of the facts on the public records of the county in which she resided for a great period of her life, would be dangerous in tire extreme. It would ■open the door to an infinity of frauds, and to interminable controversies and strife. There is no principle of policy or authority of law which would justify or countenance the pretensions of the plaintiff’.
■ The statute of this State prescribes short periods, generally, for limitation.; and where no provision of the statute is directly applicable, the limitation in analogous cases, if there be any such expressly provided for by the. statute, will bo applied; and if the matters in controversy be not analogous to any embraced in the statute, then the longest period of limitation known to our laws, which is ton years, will be the rule, on the same principle that authorizes twenty years in other States, from analogy to their statutes, to be prescribed as tiie limit.
The right to recover this legacy was barred in the lifetime of Louisa, as well before as after the partition of her father’s estate. The claim had been in existence for twenty years before the deatli of the executor; and there are no such circumstances in the case as to defeat the operation of the statute. Upon principles of policy, upon the authority of the law, and for aught that can now appear, upon consideration of sheer justice, we are of opinion that; the' .■judgment of the court below be sustained, aud it is ordered that the same be affirmed.
affirmed.
Bn a o >-3 II go a . Hi ^ D 5 sro £cr?
* Ü ¿ i C g
d 1 C o