BENJAMIN GRUMBLES AND WIFE v. EDWARD GRUMBLES.

Where the Court has already charged the jury on a given point, and additional instruction, upon the same point, is asked by counsel, the refusal of such additional instruction is not error, if it merely reiterates the charge already given, or does not suggest some particular in which the charge already given is wrong or fails to contain a full statement of the law upon the point, applicable to the facts proved.

It is believed that in all cases where the relation of trustee and *cestui que trust* is created by contract between the parties, notice, or some act of such notoriety, that it would be presumed to be known to the *cestui que trust*, should

Grumbles v. Grumbles.

be proved, before the relationship would be dissolved, and the Statute of Limitations commence to run.

In order to sustain a plea of limitation by a trustee, founded upon his declarations and acts of ownership adverse to the claim of the *cestui que trust,* such acts and declarations must be continuous and consistent ; not now denying the trust, and again admitting it ; admitting it to some persons and denying it to others.

Error from Travis. Tried below before the Hon. John Hancock.

The Court, in addition to the charge copied in the Opinion, charged the jury upon the point of adverse possession, as follows : To enable a party, possessed of property as a trustee, to claim the benefit of the Statute of Limitations in his favor, it is not indispensable that actual notice should be given to his *cestui que trust,* that is,. the person for whose benefit he held in the first instance, that such possessor sets up title in himself; but such trustee will be protected in his possession, under the Statute of Limitations, by actual notice, given to his principal, of a disavowal of his title, or by an open and public disavowal of the principal's title, and setting up title in himself, whether actual notice of such claim by the trustee be brought to the knowledge of the principal or not ; and such adverse possession if continued for the period of two years, would give complete title to the possessor.

The instructions which were asked by defendant Benjamin, on the point of adverse possession and refused, were as follows :

1st. That any act, or claim of property by the defendant, Benjamin Grumbles, inconsistent with the right claimed by plaintiff, gave to the plaintiff a cause of action, and the Statute commenced running from that date.

2nd. That, if the defendant claimed the negroes in his possession openly and notoriously as his own property, the Statute commenced running in his favor from that open and notorious claim, whether the plaintiff had actual notice of such claim or not.

3rd. That two years' adverse possession is a complete de-

fence.　If, the facts constituting such adverse possession gave the plaintiff a right of action, the defence is good, whether the plaintiff had actual notice or not ; that notice to an agent is, in law, notice to his principal.

The testimony showed that the dispute about the property became notorious in 1852 ; this suit was commenced in April, 1853.

*Oldham* and *Sneed*, for plaintiffs in error.

*Hamilton* and *Green*, for defendant in error.

LIPSCOMB, J. This was a suit brought by the appellee against the appellants, to recover two negro slaves. The substance of the evidence, as contained in the statement of the facts, shows that in 1838, in the State of Alabama, the appellant Benjamin Grumbles sold and conveyed the two slaves, with some others, to Edward Grumbles, for the consideration as set forth in the bill of sale, of four thousand dollars ; that after that time, the appellant disclaimed any ownership or control over the slaves, but always declared that he had sold them to Edward Grumbles. It was in proof that the vendee and the vendor, (who is the father of the vendee,) lived most of the time together after the sale, but that Edward furnished supplies for the negroes, and had the entire control of them, when present, but when absent, Benjamin Grumbles, Junior, had the control of them for him ; that in the year 1846, these negroes, together with others, were put into the possession of one Howard by Edward Grumbles and Benjamin Grumbles, Junior, with written instructions to take them out to Texas and to deliver them to John Grumbles ; that Howard started with the negroes, and that Benjamin Grumbles, the appellant, was in company with him; that after they had arrived at New Orleans, Howard transferred his instructions concerning the

slaves to Benjamin Grumbles, the appellant, who came on to Texas in charge of the slaves, and delivered them agreeably to instructions, to John Grumbles as agent for Edward and Benjamin Grumbles, Junior, and then returned to Alabama, and in about one year came back with his family to Texas. It is in proof, that after the arrival of the appellant and his family in Texas, John Grumbles, as agent for Edward and Benjamin Grumbles, Junior, and by their directions, gave the slaves into the possession of the appellant, to have the use of them for his and his wife's support, they being the father and mother of Edward and Benjamin, Junior ; that on doing so, he told the appellant that he must pay the taxes on them ; that from that time, the appellant was in possession of them, using them as his own, hiring out some of them, and receiving their wages.

It was proved by Cole, a witness for the appellant Grumbles, that he had known appellant, Grumbles, since 1847 ; that in '48 and '49, he, witness, had hired the boy Nat from appellant, and paid to him the hire ; that he never heard of any other owner, excepting once, when appellant was sick, and thought he would die, he willed the boy Nat to the witness; that John Grumbles told witness the negro belonged to plaintiff ; that the negroes were taken by appellant to his own place over the river, one mile east of Austin, in 1837 ; that appellant was in possession of the negroes from that time until about the time the suit was commenced.

William Grumbles, a witness for the appellee, testified that he had often, in Alabama, from the year 1843 or 1844, heard the appellant say that the negroes belonged to Edward and Benjamin Grumbles, Jr. ; and that he had heard him say the same thing in Texas ; that when witness was leaving Texas on a visit to Alabama, in the early part of the summer of 1852, the appellant told him to tell the boys, (meaning Benjamin and Edward,) to come and take charge of, or do something with their property, the negroes.

It was proven by John Grumbles, that appellant had always

told witness that the negroes belonged to his sons, Benjamin and Edward, until a short time before the commencement of this suit. Witness called upon the appellant. and told him that he had heard that appellant was about marrying a second time, and was intending to convey away, by marriage agree ment, some of the negroes, &c. ; when said appellant denied that such was the fact, and said that he would not interfere with the boys' property.

An ante-nuptial contract was proved to have been executed before marriage between the appellant Benjamin and the ap pellant Isabella, by which a life interest in the slaves was con veyed to the said Isabella. This was set up by plea in her defence, and also she pleaded the Statute of Limitations to have run in favor of her co-appellant, before the execution of the ante-nuptial contract. The appellant, Benjamin Grum bles, relied upon the Statute of Limitations. There was a ver dict for the plaintiff for the negroes, but subject to the life in terest conveyed by the ante-nuptial contract, to the appellant Isabella. There was a motion for a new trial, which was overruled, and judgment rendered in accordance with the ver dict, from which an appeal was taken to this Court. The ap pellant has assigned error,

First. The Court erred in the charge to the jury.

Second. The Court refused to charge the jury as asked by the defendant.

Third. The Court refused to grant a new trial when asked by the defendant.

The defendant asked specific charges to the jury ; the Court declined giving them as asked, but they are given in the gene ral charge ; and we believe that the course adopted by the Judge is correct, to give a general charge, and if the point upon which a specific charge is asked, is embraced and given in the general charge, to refuse to reiterate it again. The gen eral charge of the Court, so far as material to the appellant, is as follows : " If, under the evidence, you find that Benjamin

" Grumbles, Senior, took possession of the negroes under a loan
" from the plaintiff, the defendant Benjamin held them in trust
" for Edward, and Benjamin's possession was possession for
" Edward, so long as he held them under such loan, that is
" acknowledging Edward's title, and that he held them as his
" property under permission from him Edward. But the
" fiduciary relation might be determined by the act of the
" trustee, Benjamin, setting up title in himself to the negroes,
" and from the time when he would set up publicly and openly
" his title as owner, the Statute of Limitations would begin to
" run in his favor, against the plaintiff Edward, and he would
" be barred of any right to recover, by two years continuous,
" adverse possession under such claim."

If there is any error in this charge, it is in its being too favorable to the appellant, in not more specially defining in what way the trustee could put an end to his fiduciary possession. It is believed, that it must be done by notice to the *cestui que* trust, or by some act repugnant to the trust, that the jury might draw the reasonable presumption, that it must have been known to the *cestui que trust*. This evidence of an abandonment of the character of trustee, is not essential in every case of a trustee holding trust property ; in some cases, as where the trustee may not know he is the *cestui que trust*, such strong evidence of claiming ownership, repugnant to, and inconsistent with, the possession as trustee, would not be required. But when the possession was derived directly from the owner, a disclaimer of the owner's right ought, on principle, to be so notorious, as to raise the presumption that the trustee had claimed by an adverse right, and disclaimed the right of the person from whom he had received possession, before the Statute could commence to run in favor of the trustee. (See Tinnen v. Mebane, 10 Tex. R, 247 and Cochran v. Winburn, 13 Id. 143.)

It is believed that in all cases where the relation of *cestui que trust* and trustee is created by contract between the par-

ties, notice, or some act of such notoriety, that it would be presumed to be known to the *cestui que trust*, should be proven, before the relationship would be dissolved. If this should not be required, there would be nothing easier than for the bailee of a slave, or any other chattel, to perpetrate the most flagrant fraud. A leaves his negro in possession of B, whether for hire or to be taken care of only, for the term of one or two years, or until called for; A may go on a journey, be absent a long time, on his return he sees nothing inconsistent with B's undertaking the trust, the property is still in his possession; but B had, in the mean time, declared to some one, that he held the slave in his own right, and had perhaps offered to sell the slave, of which A has not received the slightest intimation; and after the lapse of two years, he demands the negro; B refuses to deliver him his property, and claims that the Statute had commenced running in his favor, from the time of his disclaimer of the right of property being in A.

The consequence of dispensing with notice, or something of such notoriety as would be a presumption that it was known to the *cestui que trust*, would be such as could not be tolerated. But, aside from the opinion here expressed, as to the acts that would be sufficient to dissolve the trust possession of the appellant, the charge as given, cannot afford to the appellant grounds of complaint, because it was as favorable to him, as any view of the law, on the subject, would authorize.

The remaining assignment to be considered, is the refusal of the Court below, to grant a new trial. This assignment ought to have been more specific, pointing to the grounds on which a new trial was asked. It is, however, clear, that it refers to the finding of the jury against the appellant's defence of the Statute of Limitations. On a full view of the statement of facts, we cannot perceive that the verdict was either contrary to, or unsupported by the facts. The appellants enjoying the use and benefit of the slaves, by working them, hiring them out, and receiving the hire, and using the same for the support of

his family, were acts consistent with, and clearly within, the object of the loan, and were not such acts as evinced a determination to dissolve the trust possession, and claim possession in the individual right of the trustee to the property.

The only act that manifested such a design was, that he had at one time willed the slave Nat to the witness Cole, but the effect of this act, so far as it would have afforded a point of time for the Statute of Limitations to commence running, is destroyed by the subsequent acknowledgment of the trust, even if it was admitted, that it was not essential, that the *cestui que trust* should have known of such act. To sustain the limitation in favor of the trustee, the adverse possession founded on such claim should be continuous.

It is in evidence, that the appellant admitted, long after the act testified to by the witness Cole, the fiduciary character of his possession, down to a very short time, less than one year, before the commencement of this suit; to William Grumbles, sending word to the boys to come and take charge of, or do something with, their negroes; and to John Grumbles, when informed that it was rumored that he was about conveying some part of the property by marriage settlement, he denied it, and said he would not interfere with the boys' property.

From a review of the facts, we do not believe the Court below erred in refusing a new trial, nor in the rendition of judgment on the verdict. Mrs. Grumbles has no right to complain, because the interest acquired by her, under the antenuptial contract, is adjudged to her. The judgment of the Court below is affirmed.

Judgment affirmed.