## RADCLIFF HUDSON v. HESTER E. WHEELER.

1. The office of a demurrer is simply to ask the judgment of the court upon the sufficiency of the pleading demurred to, and to call in question such matters of form and substance as are apparent upon its face; from which it follows that when a good cause of action is defectively pleaded, or when the petition shows upon its face that there is no good cause of action, the petition is demurrable.

2. In this case the question is fully considered whether the statute of limitations can be interposed by way of special demurrer or exceptions, when the petition shows upon its face that the plaintiff's cause of action is barred; and the conclusion is deduced, both from reason and the authorities, that it may be so interposed.

3. Fraud alone does not prevent the operation of the statute of limitations, nor does fraud, combined with mere ignorance of it on the part of the defrauded party, have that effect. The rule now established is, that the statute of limitations will not run in aid of a fraudulent deed or other act, until the fraud is discovered, or by ordinary diligence might have been discovered, by the defrauded party; nor will the statute run so long as the fraudulent party purposely conceals the fraud from the person whose interest is to be affected by it.

4. Deeds, though fraudulent and utterly void as muniments of title, may, if recorded in the county where the land lies, be proper and cogent evidence of a notorious claim and possession, adverse to the true owner, and sufficient, by force of the statute of limitations, to bar his recovery.

5. A tenant at will may terminate his tenantcy at his pleasure, notwithstanding the absence of his landlord in foreign lands; and the tenant may, after terminating the tenancy, purchase the same premises from another claimant, and invoke the protection of the statute of limitations against the claim of the former landlord—there being no fraudulent concealment in the case.

6. Long continued absence in foreign lands is no justification of ignorance on the part of a landlord that his former tenant at will had abandoned the tenancy, and had set up an adverse claim and possession to the premises; nor can such absence prevent our statute of limitations from prescribing the title of the former landlord when he sues for the land.

7. Fraud is not imputable to a married woman who receives from her husband a conveyance of property, even though the husband be guilty of fraud in making the conveyance.

. Appeal from Harris. Tried below before the Hon. James Masterson.

In July, 1868, this action of trespass to try title to a lot in the city of Houston was instituted by Hudson, the appellant, against Mrs. · Wheeler, the appellee, who was the widow of Daniel G. Wheeler, deceased, and who claimed the lot under a deed from the latter to her, made and recorded in March, 1853, and reciting a consideration of one dollar.

· The case made by the plaintiff in his original and amended petitions was, in substance, that on the first of June, 1841, he was owned and possessed of the lot in controversy; that he then placed Daniel G. Wheeler, then living, and the husband of the defendant, in possession of the lot, as tenant during the will of the said Wheeler and of the plaintiff, and on Wheeler's agreeing to pay reasonable yearly rents, alleged to be $180 per annum; that plaintiff immediately thereafter left Texas and remained in foreign parts and in other States of the Union until the first of June, 1867; that he had no agent in Texas authorized to sell the lot; that Wheeler, on the eleventh of March, 1853, made a deed to his wife, the defendant, conveying to her the lot in fee simple, for a nominal consideration of one dollar, which deed was duly recorded in Harris county on the day of its execution; that she, the defendant, had actual notice of the plaintiff's title, and of her husband's tenancy, and was a party to the fraudulent conveyance of her husband to herself; that in 1867, upon plaintiff's return to Texas, she was in possession, and refused to surrender it or pay rent; that Daniel G. Wheeler, her husband, died in 1857, and defendant became his administratrix; and that the plaintiff, in consequence of his long continued absence from this State, had remained in ignorance of the facts and the alleged frauds until his return in 1867.

In an amended petition, pleaded as a replication to an answer of the defendant which set up a conveyance from H. K. Hardy, as agent of the plaintiff, to Daniel G. Wheeler, on December 1,

1843 and duly recorded, the plaintiff alleged that Hardy had no power to convey title, and his conveyance was made by a fraudulent combination between him and Wheeler, in the consummation of which the said Wheeler temporarily left the premises and lodged in the neighborhood and in sight of them, and after obtaining the deed from Hardy moved back again and reoccupied them; but that plaintiff had no notice of these fraudulent proceedings prior to the institution of this suit.

After the filing of this amended petition, and as the last pleading in the cause, the defendant, "answering to the amended petition and to the original petition, says she demurs to the sufficiency in law and equity of the matters alleged; that they show a stale demand, barred by proscription of law; that the alleged tenancy had ended, and that defendant had been claiming adversely by deeds duly recorded for more than ten years before suit." This was the special demurrer, sustained by the court below in conjunction with a general demurrer. Judgment final being rendered against the plaintiff, he appealed.

*A. P. & E. W. Thompson* and *W. S. Billups*, for the appellant.—The statute passed the sixteenth of February, 1856; Paschal's Digest, article 4629, expressly says: "That the statute of limitation of this State shall not be made available to any person in any suit in any of the courts of this State, unless it be specially set forth as a defense in their answer."

The general demurrer, under this statute, it is at once apparent, cannot reach defects embraced under the statute of limitations, though disclosed at once by the pleadings, and so this court has more than once ruled. (*Vide* Stephen Sasser v. James H. Davis, 27 Texas, 657; Horton v. Crawford, 10 Texas, 385, 386; DeWitt v. Miller, 9 Texas, 246; Vardeman v. Lawson, 17 Texas, 17.) We may here remark, that there are several decisions of this court, prior to the passage of the act above re-

ferred to, requiring the statute of limitations to be specially plead, intimating that the statute of limitation might be plead by demurrer or plea, but since the passage of this act, these decisions have been overruled, as will be seen from the decisions above referred to.

Again, if the court below based its judgment upon the staleness of the demand or the laches of the plaintiff, a general demurrer could not reach such defects, though appearing from the pleadings. (Emmons v. Oldham, 12 Texas, 18.) But, again, could· the statute of limitation, under the statute above alluded to, and a fair construction of the rulings of this court be made available, even under special demurrer, in actions of the kind at bar ? Certainly not, if the pleadings themselves did not disclose the pertinency and applicability of the statute, and this is so in all kinds of actions. (Duggan v. Cole, 2 Texas, 381, 396.) And we do not think a special demurrer, in actions of trespass, can by fair construction of the rulings in this court, under the statute mentioned above, reach defects obnoxious to the statute of limitations, whether disclosed by the pleadings or not.

It will be seen from 7 Texas, 517, that the office of a general and special demurrer, in our practice, is similar to that assigned to it in the common law system of pleading. If this be so, the demurrer in none of its forms can be made to apply to defenses of this character, whether apparent upon the pleadings or not ; for at common law in actions of this kind, viz.: certainly trespass to real property, (if not in others,) the statute of limitation was a subject of plea and not demurrer, and had to be, as our statute requires, specially pleaded and submitted to the jury. (Chitty's Pleadings, vol. 1, 506, § 506, and authorities there cited.) Under the common law, the office of demurrer and plea is distinctly drawn, one embracing issues of law amenable to the court, and the other, issues of facts cognizable by the jury. This court too has decided that the statute of limitation must not only be specially pleaded as

the statute requires, but in actions of this kind it embraces facts to be submitted to the jury. It is matter of fact for the jury, as we think, whether the plea be in bar, confession and avoidance, discharge, justification or mitigation. (Baily v. Trammell, 27 Texas, 318, etc.)

This is undoubtedly true, if the pleadings disclose no fact coming under the legal operation of the statute of limitations, and, even if they do, we think it is a question to be decided by a jury, at least in actions of the kind at bar; for the tenancy alleged by plaintiff in the court below, as well as the fraud, excluded beyond possibility (as we shall see presently) the legal operation of the statute of limitation, and were, under our system, necessarily cognizable by a jury. These allegations could not by any sort of distortion in pleading come under the scope of demurrer in any of its forms, except, perhaps, for form, to which no objection appears by either demurrer or plea in the pleadings of defendant in the court below. And this court has ruled also that if there be any doubt, even upon the face of the pleadings, of their legal sufficiency, it is the duty of the court below to overrule the demurrer, and allow the plaintiff a trial by jury. (18 Texas, 431.)

But what are the issues of law involved in the pleadings? Is there one single averment or even admission in the pleadings of plaintiff in the court below, original or amended, that by any sort of legal construction, or even distortion, can justly be embraced under the legal operations of the statute of limitations? Certainly not; and we now invite to this end their careful perusal by this court. It will be seen from the pleadings that the facts as set forth constitute a complete bar to the statute of limitations in all its provisions, and that all averments of the defendant to that end are properly denied, and traversed by proper and appropriate pleas, showing fraud of the darkest nature, proper excuses for laches, when fraud was first discovered, and the legal impossibility, or impracticability, of its detection at an earlier date, and set-

ting forth facts and circumstances that stamp at once the whole transaction, from beginning to end, with a degree of fraud, infamy and human depravity that scarcely has its equal in the civil jurisprudence of this or any other country known to civilization; and all parties from whom the defendant claimed title were charged as privies to and confederates in this fraud, and legal and moral depravity, with the defendant. Will this court hold that fraud is no bar to the statute of limitations? We think they will hesitate long before announcing so anomalous and monstrous a doctrine. This question has never, that we are aware of, come before this court for adjudication directly. In the case of McDonald v. McGuire, 8 Texas, 361, it was collaterally raised, but not decided, because, from the circumstances of that case, it was not necessary to rest it on that point. In the case, also, of Ford v. Clements, 13 Texas, 593, the question was raised collaterally, and while the court did not think the question properly before it for decision, it yet said it would be allowed as a bar to the statute of limitations, under proper circumstances, until the fraud was, or by reasonable diligence might have been discovered. Fraud, under such circumstances as would render a discovery of the fraud impracticable by the party defrauded, must certainly form an exception to the statute, from the obvious policy of the statute itself; which, in the language of Judge Story, was enacted mainly with a view to suppress fraud, and should not therefore be so construed as to become an instrument to encourage it. "Cases of fraud, therefore, form an exception to be acted on by the courts of law and equity, according to the nature of their respective jurisdictions." Such, says Judge Story, is the reason on which the exception is built, and not merely that there is an equity binding on the conscience of the party which the statute does not reach or control. (See Sherman v. Sutton, 5 Mason, 163; Angell on Lim., 195.)

The Supreme Court of Georgia, in the case of Persons v. Jones, 12 Georgia, 371, in deciding that cases of fraud form an implied

exception to the statute of limitations, both at law and in equity, uses this remarkable language:. " That, in affirming then, the judgment of the circuit court upon this ground, it is a consolation to know that if we err, it is in company with Mansfield, Parsons and Story, and on the side of right." And, they might also have added, the illustrious Kent. (See Kane v. Youngblood, 7 Johns. Chan. R., 121, 122; Angell on Lim., 186 to 202; 13 Id., 688.)

In Doggett v. Emerson, 3 Story Rep., 740; 2 Am. Ch. Dig., 565; Hovenden v. Lord Annesly, 2 Sch & Lef., 607; Smith v. Clay, Amb., 645; Mitchell v. Thompson, 1 McLean, 104; Huenburt v. Trinity Church, 24 Wend., 605, it was decided very properly and justly, that the statute of limitations runs only from the time the fraud is discovered; and it is at once evident in the case at bar that the time limited by the statute had not expired after the alleged discovery of the fraud, suit having been instituted immediately upon its discovery, and satisfactory excuses, (at least in law and equity) given why it was not discovered before, whatever the jury might have thought under the evidence.

*Gray & Botts,* for the appellee.

OGDEN, J.—The office of a demurrer is simply to ask the judgment of the court upon the sufficiency of the pleadings demurred to, and to call in question such matters of form and substance only as may appear on the face of the pleadings. It therefore follows, that when a good cause of action is defectively pleaded, or when the pleadings show upon their face that there is no good cause of action, in either case the pleadings are demurrable, and the parties may be compelled to amend, or suffer the consequence of bad pleading or a bad cause of action.

The first question to be determined in the cause at bar is, when the petition discloses the fact that the cause of action is barred by the statute of limitations, can a demurrer, specially setting up that fact, be interposed and claim the judgment of the court

whether the plaintiff shall be permitted to further prosecute his demand? It is true that the question of bar by the statute of limitation, is generally a question of fact, to be specially plead and proven, the same as any other fact. But when the plaintiff in his pleadings sets up and admits a certain fact which materially affects his right of action, we are unable to see the reason, justice or equity of a rule which would compel a defendant to plead and prove that fact. The rule which requires all pleadings to be strictly construed as against the pleader, demands that no party shall be permitted to recover by the judgment of a court of justice, only in so far as he may have shown himself by his pleadings to be legally or equitably entitled to; and therefore, when the plaintiff shows in his petition that his demand is barred by the statute of limitations, he has no right to ask, and there is no rule of law to require, the defendant to plead or prove that fact; but the judgment of the court may properly be invoked through the instrumentality of a special demurrer. (Angell on Limitation, 394.) This is in strict conformity with all the early decisions of this court on that question. (Coles v. Kelly, 2 Texas, 554; Swenson v. Walker, 3 Texas, 95; McClenny v. Floyd, 3 Texas, 196.) But it is claimed by counsel for appellant, that the statute of 1852 (article 4629, Paschal's Digest) overruled the early decisions of this court, and changed the rule as before recognized; and that now the statute of limitations can in no instance be made available, unless the same be specially set forth in the answer. It is also claimed that a demurrer is no part of an answer, and therefore no party can avail himself of the statute of limitations by demurrer. That a demurrer, in a certain and restricted sense, is not a part of the answer may be admitted, and yet we are not inclined to the opinion that the Legislature intended thus to restrict the meaning of the words demurrer and answer, as it is expressly provided that " the defendant, *in his answer*, may plead as many several matters, whether of law or fact, as he shall think necessary for his

defense, * *. * *provided*, he file them all at the same time, and in the due order of pleading." This statute evidently intended to include as a part of the answer all pleas, demurrers and exceptions, technically so called.

This was most clearly the interpretation of the two statutes given by Chief Justice Hemphill in the case of Hopkins v. Wright, 17 Texas, 35, in which he says, " The statute of 1852 requires the law of limitation to be specially pleaded in the answer; but whether this be done by demurrer, or in the answer to the facts of the case is immaterial. The whole of the defensive pleadings or allegations constitute the answer; and limitation, wherever pleaded, is a part of the answer." We think this a correct interpretation of the statute, and that therefore the defendant may set up the statute of limitation, by special demurrer or exceptions, or by special plea, or by answer, as ordinarily understood in pleadings; and in this there has been great uniformity of decisions by this court. The cases referred to by counsel, as holding an opposite doctrine, are not decisions upon the question now at issue; they only decide that a plea of four years limitation, when not applica- to the cause at bar, or that a general demurrer, or general exception, is not sufficient to put in issue the statute of limitation. On the contrary, it has been repeatedly decided, under the statute of 1852, that the statute of limitations may be interposed by special demurrer, special exceptions or special plea. (Dickerson v. Scott, 29 Texas, 172; Hopkins v. Wright, 17 Texas, 35; Smith v. Fly, 24 Texas, 354.)

This cause was decided in the court below by a judgment sustaining the defendant's special demurrer to plaintiff's petition, which specifically set up the bar of the statute of limitation. And upon an examination of the allegations in plaintiff's petition, we are unable to discover any error in the judgment of the court, that would authorize a reversal of the cause. The petition and amended petitions admit the fact that the defendant has held pos-

session of the land sued for, under and by virtue of a deed duly executed and recorded, from her husband to herself in 1853. He also alleges that Daniel G. Wheeler, the husband of the defendant, in 1843, being in possession of the premises sued for as the tenant of plaintiff, with a fraudulent intent and purpose to terminate his tenancy, vacated the premises, and took up his residence in another part of the city of Houston; and that afterwards, having received a deed for the land from H. K. Hardy, as the agent of plaintiff, he moved back on the premises, and has since held actual possession of the same by himself or his assignee, until the institution of this suit. The plaintiff, therefore, admits that the defendant and her assignor have been in the quiet and uninterrupted possession of the land sued for, holding adversely to the plaintiff, and under deed, for more than twenty-five years; and more particularly he alleges that the defendant has held possession of the lot under a deed from her husband since 1853, over seventeen years before the filing of this suit. Under our laws ten years are the longest period before which the statute of limitations may be invoked to quiet all demands, whether for personalty or real estate, and the plaintiff shows in his petition that a much greater period has elapsed, during which time the defendant has held quiet, uninterrupted and notorious possession, under a deed duly recorded in the county where the land lies, and that therefore, under ordinary circumstances, his claim would be barred by the statute.

But then appellant, in order to avoid the bar by limitation, alleges that the two deeds from Hardy to Wheeler, and from Wheeler to the appellee, were fraudulent and void, and, therefore, conveyed no right or title whatever; and, also, that the fraud attempted to be perpetrated upon him was not discovered until a short time before the institution of this suit. That fraud alone will not prevent the statute of limitation from running has been so often decided by this court, upon the best authority in this country and England, cannot now be controverted, and we do not

consider that a debatable question. (Tinnen v. Mebane, 10 Texas, 246; Wingate v. Wingate, 11 Texas, 163; Grumbles v. Grumbles, 17 Texas, 472, and Smith v. Garza, 15 Texas, 158.)

Justice Story, in Pillow v. Roberts, 13 Howard, 477, says: " Statutes of limitation are founded on sound policy. They are statutes of repose, and should not be evaded by a forced construction. The possession which is protected by them must be hostile and adverse to the true owner. It is not necessary that he who claims their protection should have a good title, or any title but possession. Statutes of limitation would be of little use if they protected those only who could otherwise show an indefeasible title to the land." And in Mercein v. Burton, 17 Texas, 210, Justice Lipscomb fully recognizes the doctrine that a fraudulent deed, with possession, may be sufficient to interpose the statute of limitation against the true owner.

It has been held by highly respectable authorities that ignorance of the fraud would not prevent the statute of limitation from running in any case, but that rigid rule is believed to have been modified to some extent by the highest tribunals of the country, and that now the more equitable and just rule has become the law of the land; that the statute of limitation will not run to perfect a fraudulent deed, or other act, until the fraud is discovered, or until the party against whom the fraud is perpetrated has had an opportunity, by the exercise of ordinary care and prudence, to make the discovery; or, where the fraudulent act has been purposely kept secret from the party whose interest is to be affected thereby. This is believed to be the rule as laid down by nearly, if not all the elementary writers of the present day, and sanctioned by the highest judicial authority. In the case of Munson v. Hallowell, 26 Texas, 477, the authorities on this subject, and especially on the subject of fraudulent concealment, are most thoroughly investigated and reviewed, and the doctrine here enunciated fully sanctioned and established. Under this view of the law, it is

wholly immaterial whether the deeds from Hardy to Wheeler and from Wheeler to the appellee were fraudulent or not, provided there is no charge against the appellee or her assignor of concealment of these deeds, and provided, also, that appellant, by the use of ordinary care and prudence, might have discovered the existence of these deeds; and in this respect the appellant has prejudged his own cause by his allegations that one, if not both, of these deeds have been recorded in the county clerk's office of the proper county for over seventeen years, and he shows no reason but his own neglect and carelessness why he has not known that fact all the time. We are therefore of the opinion that the deeds, with the continuous possession, are sufficient to interpose the statute of limitation against appellant's claim, not because the deeds are sufficient to convey the title, but that they are evidence of a notorious and adverse claim and possession; and though it may be admitted that the deeds were originally fraudulent, yet that fact can be no excuse for a party to remain quiescent for years, until innocent parties may have become involved, and by his culpable carelessness have to suffer greater frauds than that of which appellant complains.

Appellant, in his petition in the district court, sets up the fact that in 1841 the defendant and her husband were tenants at will of his, and as such tenants he left them in possession of the premises now in litigation, some twenty-six or seven years before the institution of this suit; and he now claims that as such tenants they were legally bound to hold possession of the same for him for an indefinite period, and until he saw fit, after the lapse of a quarter of a century, to return not only to demand the premises, but also an exorbitant rent. We do not think such a proposition founded either in law or equity. On the contrary, we are of the opinion that in this country a tenant at will may terminate his tenancy at his pleasure, and that, too, whether the landlord be present or is traveling in foreign parts. That so soon as the par-

ticular tenancy is terminated, then the former tenant is at liberty to purchase or rent from any one who will sell or lease. It is, however, claimed for the appellant that as the appellee and her husband were tenants on the land they held the possession for the landlord, as trustee for him, and therefore could not set up an adverse possession.

Story (Equity Jurisprudence, 1519,) lays down this doctrine: that as long as the relation of trustee and *cestui que trust* is acknowledged to exist between the parties, and the trust is continued, lapse of time can constitute no bar; but when the relation is no longer admitted to exist, or time and long acquiescence have obscured the nature and character of the trust, or the acts of the parties or other circumstances give rise to presumptions unfavorable to its continuance, in all such cases a court of equity will refuse relief upon the ground of lapse of time, and its inability to do complete justice; and the author says this doctrine will apply as well to express, implied or constructive trusts. A similar doctrine is held in Tinnen v. Mebane, 10 Texas, 246; Wingate v. Wingate, 11 Texas, 430, and Grumbles v. Grumbles, 17 Texas, 472.

We think these authorities fully maintain the doctrine that a tenant at will may at any time abandon his tenancy and take the same property by purchase, so that the statute of limitation will eventually perfect his title. One ground of appellant's complaint is that defendant and her husband abandoned the tenancy and then took possession by purchase. We think this showing, made by appellant, of title and possession by appellee, sufficient to invoke the statute of limitation, and, therefore, sufficient to defeat his demand. Appellant claims that because of his absence from the State, he did not and could not know the condition of his property. On the contrary, we think there is a shadow of suspicion of at least gross carelessness, if not direct and positive fraud, in the inception and prosecution of this cause.

The law requires all parties to be watchful in guarding and diligent and prompt in prosecuting their interest, and if they fail to diligently protect their property and rights, they should not be heard to complain, especially after a long lapse of years, if by their supineness others have acquired rights which come in conflict with their own.

There is another question presented by the pleadings in this cause, which was properly raised by the special demurrer, and which alone might determine this cause. In the year 1843, Hardy pretended to convey the lot to Wheeler, and in 1853 Wheeler conveyed to his wife, the defendant in the lower court. Wheeler died in 1857, leaving his widow in possession of the land under a deed duly recorded, upon which land she has continued to reside as her homestead for about fifteen years. Admitting, therefore, that the original deed from Hardy to Wheeler was fraudulent, still Wheeler's wife could not be chargeable with that fraud, nor with any fraud that might have induced the deed from Wheeler to his wife; for it is a general principle in law, that a *feme covert* has no legal capacity to do any act, or to enter into any contract, and if she should attempt it her acts and her contracts are treated as mere nullities. The appellee, then, during her coverture, was the mere passive agent to receive whatever her husband might confer upon her; and when the husband died in 1857, he left his widow the owner by deed, as an innocent purchaser, of the land in controversy. These facts appear on appellant's petition below, and it was therefore obnoxious to a special demurrer. But appellant claims that because of his absence he could not have known the fraud practiced upon him. In the case of Maverick v. Salinas, 15 Texas, 61, Justice Wheeler says: " Our statute is unlike the statute of James, and the statutes of some of the States, in that it contains no saving in favor of a plaintiff who is beyond the seas, or without the limits of the State."

The appellant might have protected his interest through agents,

or correspondents, notwithstanding he was in another State or in foreign parts. But it is a little remarkable that the appellant, according to his own showing, should have left property with $180 yearly rent in the possession of a tenant at will, under a verbal contract, for twenty-six or seven years, without so much as making an inquiry with regard to the property, the title, or the rent. We think there is no error in the judgment of the court below, and it is therefore affirmed.

Affirmed.