## McCABE v. CAMBIANO et al.
### No. 11983.

Court of Civil Appeals of Texas.
Galveston.

May 13, 1948.

Rehearing Denied June 10, 1948.

Jack W. Knight and William F. Grimes, both of Houston, for appellant.

Armstrong, Barker, Bedford & Smith, of Galveston, for appellees.

CODY, Justice.

This is an action in trespass to try title to 10 acres of land in Hitchcock, Galveston County, brought by Nick Cambiano, Jr., and James K. Marrs against Herbert Mc-Cabe and his brother Morris McCabe and Mrs. Morris McCabe and the unknown heirs of Morris McCabe and wife. The plaintiffs also sued to recover title by adverse possession under the 5 and 10 year statutes of limitation. Vernon's Ann.Civ. St. arts. 5509, 5510. The defendant Herbert McCabe's answer consisted of a plea of "not guilty" and the attorney who was appointed to represent Morris McCabe and the other defendants, all of whom were cited by publication, also filed a plea of "not guilty."

The court, trying the case without a jury, rendered judgment for plaintiffs, and defendant Herbert McCabe alone appealed. He will hereafter be referred to as defendant. In response to defendant's request, the court filed conclusions of law and fact. Therefrom it appears:

That Herbert and Morris McCabe were brothers and sons of P. J. McCabe. That P. J. McCabe died intestate in 1940; that Morris McCabe died intestate in 1929 and Herbert McCabe is the sole surviving heir at law of his said father and brother.

That Mary E. Ricker was the common source of title. She died July 7, 1925, and by her will, which was probated by the county court of Galveston County, she left a life estate in the land here in suit to her brother P. J. McCabe with remainder to Herbert McCabe and Morris McCabe, share and share alike. Morris McCabe was appointed and qualified as the executor of her estate. He was removed as such on August 30, 1927.

That plaintiffs are claiming through C. J. Henck from the common source of title. That on May 1, 1927, while Morris McCabe was acting as executor, he and his brother Herbert and his father P. J. McCabe borrowed from C. J. Henck $470 and executed their notes therefor and secured said notes by a deed of trust on the 10 acres of land here in question. That C. J. Henck was appointed administrator of the estate of Mrs. Ricker on September 20, 1927. By deed dated April 11, 1928, which was promptly filed for record, C. J. Henck, as administrator of Mrs. Ricker's estate, conveyed the land to M. Brooking for a cash consideration of $375 and the assumption of the payment of the aforesaid indebtedness of $470, the payment of which, as aforesaid, was secured by a deed of trust on said land. Said sale was made under the direction of the Probate Court and by the court confirmed. That on April 23, 1928, Brooking and wife reconveyed the land to C. J. Henck for $10 and other valuable consideration.

That since April 23, 1928, the land has been claimed by C. J. Henck and those holding under him. The said C. J. Henck held possession thereof through tenants from the date of the aforesaid deed to him until his death on November 8, 1934. He willed the property to his brother, W. D. Henck, who continued in possession thereof until his death on August 23, 1943. W. D. Henck willed the property to A. B. Jones as trustee and plaintiff James K.

Marrs as substitute trustee. On July 21, 1947, plaintiff Nick Cambiano, Jr., purchased the surface estate and 15/16ths of the minerals for $7500 cash and went into possession and now holds possession.

That no evidence was offered by the defendant and it was only after the evidence was closed and in argument by defendant's counsel for judgment that they disclosed their contention in the case was that the conveyance of April 11, 1928, by C. J. Henck as administrator of the estate of Mrs. Ricker to Brooking was indirectly a purchase by Henck of the property of which he was administrator and as such the sale was inhibited by R.C.S.Article 3579 and inhibited by principles of equity governing fiduciary relations.

That there was no evidence that the consideration recited in the deed of April 11, 1928, was not in fact paid by the grantee nor that same was not the full fair market value of the property, nor that the transaction constituted or involved any intrinsic fraud upon the estate of Mrs. Ricker or any person interested therein, nor that the transaction was indirectly a sale from Henck as administrator to himself. That the defendant's contention was that the deed from Henck, administrator, to Brooking, and the reconveyance by Brooking, established as a matter of law, an indirect sale to Henck, and disclosed intrinsic fraud, requiring that the property be impressed with a constructive trust for defendant Herbert McCabe, and that Cambiano could not be an innocent purchaser.

In this connection it is to be noted that on August 13, 1927, which was while Morris McCabe was executor, the land in question was levied upon under a judgment rendered against defendant and his father, P. J. McCabe and sold out at Sheriff's sale and bought in by Henck, who as stated before, at that time held a deed of trust on said land securing the payment of a loan he had made of $470. It does not appear how the title got back into the Ricker estate, but thereafter, as indicated, the Probate Court authorized the sale to Brooking. The sale was approved April 10, 1928.

The court's conclusions of law were to the effect:

239

That plaintiffs, and those under whom they held, had held adverse possession since the date of the deed to Henck and had matured title by adverse possession under the 5 and 10 year statutes of limitation. Also that they had a good record title from the common source. Also that the right to question the validity of the deed was barred by the four year statute of limitation, Vernon's Ann.Civ.St. art. 5520, and the court was of the opinion that plaintiffs should be granted leave by trial amendment to plead laches and that Cambiano was an innocent purchaser for value. The court based its decisions largely on Dilbeck v. Blackwell, Tex.Civ.App., 126 S.W.2d 760, writ refused.

Defendant McCabe alone appealed and bases his appeal on seven points, which are in substance:

1. That the evidence established as a matter of law that C. J. Henck, administrator, held the property as a constructive trustee because he purchased the property while he was administrator.

2. "Since appellant's (defendant's) equitable title held by C. J. Henck as constructive trustee for the use and benefit of appellant was used only defensively—not affirmatively—to defeat appellees claimed title, limitation, laches and stale demands are not issues in the case."

3. That since the record title introduced by plaintiffs shows, as a matter of law, that Henck held the title as constructive trustee, plaintiffs could not be innocent purchasers for value.

4. The trial court abused its discretion in permitting plaintiffs to file a trial amendment after judgment.

5. That defendant had no actual notice of the repudiation of the trust by Henck if he did repudiate it and Henck, not being in defendant's chain of title, the deed to him did not constitute constructive notice to defendant and so could not start the statute of limitations running.

6. That the breach of trust by Henck gave rise to a presumption that he held the title as constructive trustee for defendant and those whose heir defendant is and cast the burden on plaintiffs claiming under Henck to disprove defendant's title as cestui que trust under Henck as constructive trustee.

7. Defendant was entitled, upon the showing of the said breach of trust by Henck which made him constructive trustee, to recover title to the property and it was not necessary for him to attack the deed collaterally or otherwise.

We agree with the trial judge that this case under its facts is governed by Dilbeck v. Blackwell, Tex.Civ.App., 126 S.W. 2d 760, 763, writ refused, and that judgment should have been rendered in favor of plaintiffs, and we affirm the judgment.

■ The defendant was called to testify to certain matters by plaintiffs, and testified that he never knew of the bequest to him of an interest in the ten acre tract, and denied that he had been served with citation in the aforesaid suit in which judgment was rendered against him, though the judgment recited such service of citation. Defendant also denied that the signature to the notes for $470, and to the deed of trust, were placed there by him, but stated that his father's name signed thereto looked like his father's signature. The court, by comparing specimen signatures which were admittedly defendant's, stated that he thought the signature was defendant's, but informed defendant in open court that he might produce a bank teller or other expert if he so desired. No expert was produced. The court was not bound to believe defendant, and the evidence would support the inference that defendant did know of the bequest to him of the ten acre tract, and that the said property was in the adverse possession of Henck and those holding under him for a sufficient time to mature a limitation title.

In the Dilbeck case, the court said: "There are decisions from other states to the effect that upon proof of the fact that the executor was also the purchaser, directly or indirectly, at sales made by him under orders of the court, even though no extraneous fraud or unfairness is in fact shown, equity will avoid the sale by impressing the property with a trust in favor of the beneficiaries of the estate. Crawford County Bank v. Bolton, 87 Ark. 142, 112 S.W. 398; 24 Cor.Jur. 633 Sec. 1590,

and authorities there cited. Such decisions appear to make no distinctions between sales authorized and confirmed by judgments of the court and sales made by an executor or other trustee not under judgments of the court authorizing and confirming same. In such cases where the sale is not required to be confirmed it is said: 'The rule is founded on the danger of imposition and the presumption of the existence of fraud inaccessible to the eye of the court.' Nabours v. McCord, 97 Tex. 526, 80 S.W. 595, 598. However, in all the cases we have found reported in this state, where courts of equity have impressed the property with a trust in favor of the beneficiaries of an estate, and thus avoided sales authorized and confirmed by judgments of the probate court, there appears to have been shown in addition to proof of the executor's purchase at the sale some extraneous fraud or unfairness with respect thereto invoking the exercise of equity jurisdiction. Johnston v. Stephens, supra [121 Tex. 374, 49 S.W.2d 431, 436], quotes from Freeman on Judgments (5 Ed.) Vol. 3, Sec. 1084, reading as follows * * *: 'But in all these cases equity may be resorted to only upon a sufficient showing of some ground for the exercise of equitable jurisdiction such as mistake or extrinsic fraud, and not merely to review the action of the probate court. "The courts of chancery have no power to take such cases out of probate courts for the purpose of proceeding with the administration. But their power and functions to relieve against fraud, accident and mistake, or impending irremediable mischief is universal, extending over suitors in all of the courts." The fraud which will justify equitable relief against probate orders or judgments must, of course, be extrinsic.' "

The law does not automatically impress property with a constructive trust, as defendant appears to think. Constructive trusts are classified as belonging to remedial rather than to substantive law. The frauds or wrongs for which the courts in the exercise of equitable powers will give relief by impressing a constructive trust, are such for which the courts in the exercise of their legal powers will give damages as compensation. And it sometimes happens that an action for damages is the more appropriate or beneficial. The injured person has the option as to what character of suit he will bring. But in practical effect in this case it makes no difference whether the subject of "construction trust" be classified as an equity (i.e., a cause of action that invokes the equitable powers of the court) or as an equitable estate. Because, if it could be said that, even without any judgment of a court impressing a constructive trust on the property, the defendant became vested with an equitable estate in the ten acres of land in virtue of Henck acquiring the title thereto while administrator, yet Henck's adverse possession was sufficient to divest defendant of title to an equitable estate.

In Hunter v. Hubbard, 26 Tex. 537, it was said: "Where the trust, however, it is said, is merely implied or constructive, there has been some disagreement among the cases, but the better opinion appears to be, that as in general the facts out of which such trust arises, from their very nature, presuppose an adverse claim of right, on the part of the trustee, by implication from the beginning, the statute will commence to run against the cestui que trust from the period at which he could have vindicated his right by an action or otherwise. Hill on Trustees, 264, note 2; Ang.Limit. Sec. 471. The latter author says: 'It is indeed perfectly clear, that whenever a person takes possession of property in his own name, and is afterwards by matter of evidence or by construction of law changed into a trustee, lapse of time may be pleaded in bar.' And the supreme court of the United States says: 'Though time does not bar a direct trust, as between trustee and cestui que trust, till it is disavowed, yet, where a constructive trust is made out in equity, time protects the trustee, though his conduct was originally fraudulent, and his purchase would have been repudiated for fraud.' Boone v. Chiles, 10 Pet. [177], 223 [9 L.Ed. 388]. And this has been the doctrine uniformly held by this court. Tinnen v. Mebane, 10 Tex. 246, [60 Am.Dec. 205];

Wingate v. Wingate, 11 Tex. 430; Hall v. Hall, 11 Tex. 526; Grumbles v. Grumbles, 17 Tex. 472."

The defendant's points disclose no reversible error, and the judgment is affirmed.